John MANOUS, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–85–607.

Court of Criminal Appeals of Oklahoma.

Nov. 9, 1987.

Thomas Purcell, Asst. Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Linda L. Gray, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

The appellant, John Manous, was charged, tried and convicted in the District Court of Okmulgee County of the crime of First Degree Rape and Sodomy for which he received sentences of ten (10) years and five (5) years, respectively. From these judgments and sentences, he appeals.

On June 16, 1982, M.W. was asleep in her apartment in Okmulgee, Oklahoma, when shortly before 3:00 in the morning, she was awakened by the wind which was blowing

her curtains around the bedroom. She recalled that her windows were locked before retiring to bed, but further inquiry revealed that a window was open. As she went to close the window, she noticed the appellant standing up against her house. Before M.W. could close the window, the appellant stuck his hands through the window and told her to let him in or he would shoot her. The appellant successfully entered the home and as the two began to struggle, M.W. screamed for her roommate, S.M. As S.M. entered the room, Marlene told her to call the police, which she did. Having freed herself from the appellant's grasp, Marlene grabbed her infant son, Blake, ran through the kitchen into the bathroom and locked the door. Moments later, she heard a loud noise like someone kicking on a door, and heard S.M. scream. S.M. then ran down the hall, knocked on the bathroom door and requested M.W. to let her in. When she opened the door, the appellant also forced himself into the bathroom.

He then ordered the two women to sit down and as M.W. did so, he tried to grab the infant from her. The appellant also inquired whether the child was a boy or girl. M.W. then grabbed the child back and told him it didn't matter. He then turned his attention toward S.M. and ordered her to sit down. After she refused to do so, he pulled her pants down, but she pulled them back up. Subsequently, the appellant then pulled S.M. down, pulled off her shorts, orally sodomized her, and then had intercourse with her. During intercourse, both women asked the appellant why he was doing it, and told him he could go to jail for what he was doing. He then claimed that he did not have anyone else to have sex with and that he did not care if he got in trouble. The appellant was still engaged in intercourse when the police came in through the front door and requested the appellant to come out of the bathroom. As he did so, the officers observed M.W. holding her child in the bathroom and S.M., who was wearing nothing but a shirt.

■ In his first assignment of error, the appellant contends that the State presented

insufficient evidence to prove that the appellant was sane beyond a reasonable doubt. The M'Naghten rule is the test for insanity in Oklahoma, 21 O.S.1981, § 152. The initial burden is on the defendant to establish reasonable doubt as to his sanity. *Munn v. State*, 658 P.2d 482 (Okl.Cr.1983). If the defendant establishes a reasonable doubt of his sanity, the presumption of sanity vanishes and it is incumbent upon the State to prove beyond a reasonable doubt that the defendant could distinguish between right and wrong at the time of the offense. *Id.*

■ In the present case, the appellant presented the testimony of Dr. Bryant, the appellant's psychologist, who had seen him approximately twenty (20) times from 1977. Dr. Bryant treated the appellant seven (7) months before the incident and saw him again three (3) months after the arrest, in which he diagnosed the appellant as paranoid schizophrenic. In his opinion, the appellant was psychotic at the time of the commission of the crimes and could not distinguish between right and wrong. The appellant also presented the testimony of his three (3) sisters who related the unusual manner in which their brother acted. They found that their brother had his good days on which he was a nice person to be around and could distinguish what was real and what was not, and had his bad days when he would have auditory and visual hallucinations as well as periods of aggression and violence. The appellant then testified that he did not rape anyone. He further alleged that he had been to the women's house several times, and at the time of the incident, Sheila invited him inside. However, he did acknowledge that it would be wrong to tell someone that you're going to shoot them, if they did not let you into their house. Furthermore, he stated that it would be wrong to have sexual relations with a woman if she did not want to have any.

The State, on the other hand, presented the testimony of the arresting officers. In their dealings with the appellant, they found that he was fully aware of the situation and understood what had occurred.

He responded to the requests of the officers and did what they told him to do. At the time of his arrest, the appellant told the officers that he didn't understand what made him do something that he knew was wrong and asked them for their forgiveness. He pleaded for them to kill him because he would do it again. During the booking process, he had no trouble understanding or answering the questions that were asked of him. Furthermore, his answers were intelligible and understandable.

Dr. William Ford, head of the forensic unit at Eastern State Hospital, then testified that he had observed the appellant, and although he could not say with medical certainty whether the appellant knew the difference between right or wrong at the time of the crime, he stated that at the time he first saw the appellant, he felt that he was capable of differentiating between the two. The doctor believed that those acts nearest to the time at issue were the most relevant. The fact that the appellant had requested forgiveness following the crime would indicate that he was feeling guilty. Dr. Ford stated that an indication of feeling guilty would indicate to him a perception of the difference between right and wrong. Finally, he indicated that people suffering from mental illness can usually differentiate right from wrong, and for the appellant not to be able to do so would be an unusual case.

It is a well established rule that the question of whether the State has carried its burden of proving the defendant's sanity at the time of the crime is a question of fact for the sole determination of the jury and where there is any evidence tending to support its finding, it is not the province of the appellate court to weigh the same. *Smith v. State*, 646 P.2d 1285 (Okl.Cr. 1982). After carefully considering the record in the instant case, we are of the opinion that there is evidence which supports the jury's conclusion that the appellant could distinguish between right and wrong when he sodomized and raped the victim. Therefore, this assignment is meritless.

In his second assignment of error, the appellant alleges that the sentence should be modified due to the erroneous instruction given by the trial court as well as the improper comments of the prosecution during closing argument. He contends that a court instruction which stated that "the essential guilt of rape.... consists in the outrage to the person and feeling of the female" combined with the prosecutor's closing argument allowed the jury to consider the feelings of the victim in reaching the sentences. The prosecution commented that S.M.'s indignity and tears on the witness stand should be considered as part of the outrage mentioned in the instructions.

While this instruction should not have been given, we can review neither the instructions nor the comments because they were not properly preserved for appeal. Failure to object to both the instruction and any alleged improper argument of prosecution has waived any error. *Myers v. State*, 623 P.2d 1035 (Okl.Cr.1981). Moreover, the jury was properly instructed as to the elements of the crime, and the sentences imposed by the jury were light in view of the overwhelming evidence of guilt and the serious nature of the crimes. This assignment is groundless.

Judgments and sentences are AFFIRMED.

BRETT, P.J., and PARKS, J., concur.