Benjamin BREWER, Plaintiff–Appellant,

v.

Dan REYNOLDS, Defendant–Appellee.

No. 94–5072.

United States Court of Appeals,
Tenth Circuit.

April 5, 1995.

Benjamin Lee McCullar, Oklahoma Indigent Defense System, Norman, OK, for plaintiff-appellant.

A. Diane Blalock, Asst. Atty. Gen. (Susan Brimer Loving, former Atty. Gen. and W.A. Drew Edmondson, Atty. Gen., with her on the briefs), Oklahoma City, OK, for defendant-appellee.

Before ANDERSON, TACHA and KELLY, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

In 1983, an Oklahoma jury convicted Benjamin Brewer of first degree murder and sentenced him to death. After unsuccessfully pursuing a direct appeal of his conviction and post-conviction relief in the Oklahoma state courts, Mr. Brewer filed this, his first federal petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254. In his petition, Mr. Brewer raised thirty-six claims. The district court denied the petition, but issued a certificate of probable cause.

In this appeal, Mr. Brewer's only challenge is to the district court's denial of two of his claims. First, he contends the district court erred in ruling that he received effective assistance from his trial counsel during the penalty phase of his trial. Specifically, he claims his counsel was ineffective for failing to introduce mitigation evidence relating to his mental condition and for failing to call his mother as a mitigation witness. Second, Mr. Brewer contends that the district court erred in concluding that he did not have a constitutional right to the appointment of a mental health expert to assist in the penalty phase of his trial. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

On August 17, 1978, the semi-nude body of Karen Joyce Stapleton was discovered in her Tulsa apartment. She had been stabbed twenty-one times. Mr. Brewer confessed to the crime and physical evidence introduced at trial corroborated that confession.

In 1979, Mr. Brewer was tried in the Tulsa County District Court on a charge of first degree murder. He raised the defense of insanity, relying on the expert testimony of Dr. Anthony C. Gagliano, a private osteopath specializing in psychiatry. Mr. Brewer was represented at trial by Frank McCarthy of the Tulsa County Public Defender's Office. The jury found Mr. Brewer guilty of first degree murder and, in the bifurcated penalty phase, recommended the death penalty. Finding prosecutorial misconduct during the trial, the Oklahoma Court of Criminal Appeals reversed the conviction. *Brewer v. State*, 650 P.2d 54 (Okla.Crim.App.1982).

Mr. Brewer was retried in 1983, again raising the defense of insanity. In the second trial, he was represented by Mr. McCarthy with the assistance of Thomas Burns, another attorney in the Tulsa County Public Defender's Office.

In support of his insanity defense, Mr. Brewer again introduced the expert testimony of Dr. Gagliano. Dr. Gagliano did not conduct any psychological testing on Mr. Brewer. Rather, he based his findings on his review of Mr. Brewer's mental health records, a discussion with one of the mental health experts who previously had examined Mr. Brewer, an interview with Mr. Brewer's mother and written materials received from her, and interviews with Mr. Brewer.

Dr. Gagliano testified that, although Mr. Brewer was not psychotic, he suffered from a personality disorder. R.Supp.Vol. III at 921.

Dr. Gagliano further testified that he found no insanity or thought disorder either prior to or after the homicide, but that the "bizarreness and insaneness of the crime" represented a thought disorder at the time of the act. R.Supp.Vol. III at 920; R.Vol. I, Doc. 52 at 5.

As to the legal defense of insanity, Dr. Gagliano testified that at the time he committed the murder Mr. Brewer was insane; that is, he neither knew the difference between right and wrong, nor could he appreciate the consequences of his actions. R.Supp.Vol. III at 925.[1]

The jury rejected Mr. Brewer's insanity defense and returned a guilty verdict on the first degree murder charge. In the penalty phase of the trial,[2] the State alleged the following aggravating factors: (1) that Mr. Brewer previously had been convicted of a felony involving the use or threat of violence to the person;[3] and (2) that the murder was especially heinous, atrocious, or cruel.[4] The State introduced by motion the guilt/innocence phase prosecution evidence. Addition-

ally, in support of the prior violent felony aggravator, the State introduced the judgment and sentence of the 1977 rape conviction and Mr. Brewer's stipulation that the crime involved the use or threat of violence to the person. R.Supp.Vol. III at 1065–67. The State called no witnesses during the penalty phase.

Mr. Brewer instructed his attorneys not to call any witnesses during the penalty phase. At the federal habeas corpus hearing, Mr. McCarthy testified[5] that he and Mr. Burns discussed whether or not they should override Mr. Brewer's direction and present mitigation witnesses. R.Vol. VIII at 18. Mr. McCarthy further testified that, at the time of trial, he did not believe Mr. Brewer was competent to make the decision to forego presentation of mitigating evidence; that, as far as Mr. McCarthy knew, Mr. Brewer had no reason for directing his counsel not to put on mitigating evidence; and that defense counsel's decision to forego presentation of mitigating evidence was not a "tactical deci-

1. Oklahoma follows the M'Naughten test of legal insanity. *See* Okla.Stat.Ann. tit. 21, § 152 (West 1983); *Manous v. State*, 745 P.2d 742, 744 (Okla. Crim.App.1987).

2. Under the Oklahoma capital sentencing scheme, a separate penalty phase of the trial is held. Okla.Stat.Ann. tit. 21, § 701.10 (West 1983). Before the jury may recommend the sentence of death, it must unanimously find, beyond a reasonable doubt, at least one of the enumerated aggravating circumstances, and it must determine that the aggravating circumstance(s) outweigh the mitigating factors. *Id.* §§ 701.11–.12.

3. Okla.Stat.Ann. tit. 21, § 701.12(1) (West 1983). Mr. Brewer had been convicted of first degree rape in 1977.

4. Okla.Stat.Ann. tit. 21, § 701.12(4) (West 1983). Following our decision in *Cartwright v. Maynard*, 822 F.2d 1477, 1482 (10th Cir.1987), *aff'd*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988), the Oklahoma Court of Criminal Appeals restricted the application of this circumstance to murders preceded by torture or serious physical abuse. *Stouffer v. State*, 742 P.2d 562, 563 (Okla. Crim.App.1987), *cert. denied*, 484 U.S. 1036, 108 S.Ct. 763, 98 L.Ed.2d 779 (1988). Uniform Jury Instruction OUJI–CR 436, which the Oklahoma Court of Criminal Appeals held in *Stouffer* sufficiently directed and limited the jury's discretion to impose the death penalty, was read in Mr. Brewer's case:

As used in this instruction, the term "Heinous" means extremely wicked or shockingly evil; "Atrocious" means outrageously wicked or vile; "Cruel" means pitiless, or designed to inflict a high degree of pain, with utter indifference to, or enjoyment of, the sufferings of others.

The phrase "Especially heinous, atrocious, or cruel" is directed to those crimes where the death of the victim was preceded by torture of the victim or serious physical abuse.

*Id.* In this case, the state district court on collateral review found, and Mr. Brewer has not challenged, the following facts in support of this aggravating circumstance: the victim was awake and aware of what was happening to her as evinced by the presence of "defensive wounds"; the victim had been stabbed twenty-one times; she bled to death as a result of the severing of the carotid artery, as evinced by the great amount of blood around her body; she had numerous defensive wounds on her arms, hands, and sides indicating that she was attempting to defend herself from the petitioner; the petitioner stated that he knew the victim was dead or dying because "she was ... drowning in her own blood"; and finally, the petitioner stated that after stabbing the victim he "sat down on the couch and watched Karen Stapleton thrash in her own blood." *Brewer v. State*, No. CRF–78–2137, at 8–9 (Tulsa County Dist.Ct. Sept. 21, 1988).

5. Mr. Burns, then deceased, did not testify at the federal hearing.

sion." *Id.* at 18, 22, 31. Thus, although defense counsel believed that the testimony of Mr. Brewer's mother, Shirley Brewer Botkin, would have been helpful, they nonetheless acceded to the wishes of their client and called no mitigation witnesses. *Id.* at 18, 30–31. Defense counsel did, however, introduce by motion the defense evidence presented during the guilt/innocence phase. Thus, Dr. Gagliano's testimony, presented during the guilt/innocence phase of the trial, was again before the jury in the penalty phase.

The jury found the two statutory aggravating factors beyond a reasonable doubt and returned a recommendation that the death penalty be imposed. On October 27, 1983, the court sentenced Mr. Brewer to death.

On direct appeal, the Oklahoma Court of Criminal Appeals affirmed the conviction and sentence, *Brewer v. State*, 718 P.2d 354 (Okla.Crim.App.1986), and the United States Supreme Court denied certiorari, *Brewer v. Oklahoma*, 479 U.S. 871, 107 S.Ct. 245, 93 L.Ed.2d 169 (1986). Mr. Brewer thereafter sought post-conviction relief in the Oklahoma state courts. The district court denied post-conviction relief on September 19, 1988. *See Brewer v. State*, No. CRF–78–2137 (Tulsa County Dist.Ct. Sept. 21, 1988). That decision was affirmed in an unpublished opinion by the Oklahoma Court of Criminal Appeals on September 8, 1989. *See Brewer v. State*, No. PC–88–868 (Okla.Crim.App. Sept. 8, 1989).

On June 12, 1992, Mr. Brewer filed this federal habeas corpus petition. The district court held an evidentiary hearing on December 23, 1993, and subsequently entered an order denying the petition. The court did, however, grant a certificate of probable cause and Mr. Brewer filed a timely notice of appeal with this court. A stay of execution order, entered by the district court on June 12, 1992, remains in effect. *See* R.Vol. I, Doc. 11.

◼ As to each of the claims presented in this appeal, Mr. Brewer has exhausted the available state-court remedies. *See* 28

U.S.C. § 2254(b). Mr. Brewer first presented the ineffective assistance of counsel claim to the Oklahoma district court in his application for post-conviction relief. *Brewer v. State*, No. CRF–78–2137 (Tulsa County Dist. Ct. Sept. 19, 1988). The court concluded that because ineffective assistance of counsel is a claim which may be raised on direct appeal, Mr. Brewer could not raise it for the first time on collateral review. *Id.* at 3–4 (citing *Jones v. State*, 704 P.2d 1138, 1140 (Okla. Crim.App.1985). The Oklahoma Court of Criminal Appeals affirmed. *Brewer v. State*, No. PC–88–868 (Okla.Crim.App. Sept. 8, 1989). However, in *Brecheen v. Reynolds*, 41 F.3d 1343 (10th Cir.1994), we recently held that the failure to raise a claim of ineffective assistance of counsel on direct review will not preclude federal review of that claim. *Id.* at 1363–64. Thus, Mr. Brewer's ineffective assistance of counsel claim is not procedurally barred.[6]

Mr. Brewer's second claim, that he was denied the appointment of a mental health expert in violation of the Fourteenth Amendment, was raised on direct appeal and the Oklahoma Court of Criminal Appeals disposed of the claim on the merits. *See Brewer v. State*, 718 P.2d 354, 363 (Okla.Crim.App. 1986).

## DISCUSSION

◼ In reviewing the district court's denial of Mr. Brewer's habeas corpus petition, we accept the court's findings of fact unless clearly erroneous and we review the court's conclusions of law de novo. *Thomas v. Kerby*, 44 F.3d 884, 886–87 (10th Cir.1995); *Kell v. United States Parole Comm'n*, 26 F.3d 1016, 1019 (10th Cir.1994); *Hill v. Reynolds*, 942 F.2d 1494, 1495 (10th Cir.1991).

## I. INEFFECTIVE ASSISTANCE OF COUNSEL DURING THE PENALTY PHASE

Mr. Brewer's first claim is that his trial counsel was ineffective in not introducing the following evidence during the penalty phase

---

**6.** Although the briefs in this case were filed prior to our decision in *Brecheen*, at oral argument, the State conceded that, under *Brecheen*, Mr. Brewer's ineffective assistance of counsel claim was not procedurally barred.

of his trial: psychological evidence relating to his lifelong mental and emotional disturbance; and the testimony of his mother, Shirley Brewer Botkin. Noting that Mr. Brewer had instructed his attorneys not to present mitigating evidence, the federal district court stated its refusal to "establish a rule whereby an attorney must disregard the explicit instructions of his client, who has been found competent, or risk being found ineffective as counsel," R.Vol. I, Doc. 53 at 14, and denied habeas corpus relief on this ground.

■ A claim of ineffective assistance of counsel presents a mixed question of law and fact which we review de novo. *Brecheen v. Reynolds,* 41 F.3d 1343, 1365–66 (10th Cir. 1994); *United States v. Whalen,* 976 F.2d 1346, 1347 (10th Cir.1992). We accept the factual findings of the district court unless they are clearly erroneous. *United States v. Haddock,* 12 F.3d 950, 955 (10th Cir.1993).

The two-part test of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), governs review of an ineffective assistance of counsel claim:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687, 104 S.Ct. at 2064; *Stafford v. Saffle,* 34 F.3d 1557, 1562 (10th Cir.1994); *see Kimmelman v. Morrison,* 477 U.S. 365, 381, 106 S.Ct. 2574, 2586, 91 L.Ed.2d 305 (1986); *United States v. Rivera,* 900 F.2d 1462, 1472 (10th Cir.1990).

"The Supreme Court has observed that often it may be easier to dispose of an ineffectiveness claim for lack of prejudice than to determine whether the alleged errors were legally deficient." *Haddock,* 12 F.3d at 955; *see Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069–70; *United States v. Smith,* 10 F.3d 724, 728 (10th Cir.1993); *Coleman v. Brown,* 802 F.2d 1227, 1233 (10th Cir.1986), *cert. denied,* 482 U.S. 909, 107 S.Ct. 2491, 96 L.Ed.2d 383 (1987). This is a case in which we may heed the Supreme Court's suggestion and turn immediately to *Strickland's* prejudice component.[7]

In order to establish the prejudice component of the *Strickland* analysis, Mr. Brewer must show there exists "a reasonable probability that, but for counsel's purported unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068; *see Osborn v. Shillinger,* 861 F.2d 612, 626 (10th Cir.1988); *see also Kimmelman,* 477 U.S. at 381, 106 S.Ct. at 2586; *Andrews v. Deland,* 943 F.2d 1162, 1193 (10th Cir.1991), *cert. denied,* 502 U.S. 1110, 112 S.Ct. 1213, 117 L.Ed.2d 451 (1992); *Tapia v. Tansy,* 926 F.2d 1554, 1564 (10th Cir.), *cert. denied,* 502 U.S. 835, 112 S.Ct. 115, 116 L.Ed.2d 84 (1991); *Rivera,* 900 F.2d at 1472. In the context of a challenge to counsel's effectiveness at the penalty phase of a capital trial, prejudice is established if the petitioner demonstrates "a reasonable probability that, absent the errors, the sentencer—including an appellate court, to the extent that it independently reweighs the evidence—would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Strickland,* 466 U.S. at 695, 104 S.Ct. at 2069; *Osborn,* 861 F.2d at 626 n. 12. In reviewing a claim of prejudice, we must "keep in mind the strength of the government's case and the aggravating factors the jury found as well as the mitigating factors that might have been presented" if the petitioner had been provided effective assistance of counsel. *Stafford,* 34 F.3d at 1564; *see Strickland,* 466 U.S. at 696, 104 S.Ct. at 2069.

---

7. In so doing, we need not, and therefore do not express any opinion as to whether Mr. Brewer's trial counsel's performance was deficient.

## A.

■ Mr. Brewer first claims that the sentencing jury should have heard evidence regarding "the severe mental and emotional impairments suffered by Benjamin Brewer throughout his life that mitigated the degree of his culpability." Petr's Br. at 27. In support of this argument, Mr. Brewer introduced the testimony of two psychologists at the federal habeas corpus hearing: Dr. Patricia Fleming, a clinical psychologist, and Sally Church, a licensed professional counselor.[8]

Dr. Fleming conducted her evaluation of Mr. Brewer in 1993, fifteen years after the crime. She and her associate conducted a battery of psychological tests which included the Minnesota Multiphasic Personality Inventory ("MMPI"), the Wechsler Adult Intelligence Scale, the Wechsler Memory Scale, and various other tests of sensory and perceptual functioning. Mr. Brewer tested within the average or normal range on most of these tests. Dr. Fleming noted that Mr. Brewer's I.Q. of 120 was slightly above average. Dr. Fleming reviewed Mr. Brewer's previous mental health records which included two competency evaluations performed at the Eastern State Hospital (one in 1976, prior to his trial for rape; the second in 1979, prior to his first trial on the first-degree murder charge); the report of Dr. Paul Aleksic, a psychologist who examined Mr. Brewer when he was sixteen years old; and the testimony of Dr. Gagliano. Dr. Fleming also communicated with Mr. Brewer's family members and conducted approximately nine hours of interviews with Mr. Brewer.

Dr. Fleming testified that Mr. Brewer suffers from a "schizoid personality disorder";[9] that he exhibits a "high level of paranoia, alienation, social alienation, suspiciousness";

and that, in her examination of Mr. Brewer, he "showed some antisocial behavior things on [the MMPI and Beck Depression Scale tests], some psychotic thinking." R.Vol. VIII at 59. She noted in her evaluation that Mr. Brewer "has a number of traits typical of the aggressive man with little regard for others, poor interpersonal relationships, and social isolation." R.Vol. III, Doc. 13 at 12.

Mr. Brewer contends that, had the jury heard this psychological evidence, it would have viewed him in a different light, and he concludes that there is a reasonable probability the jury would not have rendered a recommendation of death. The State, on the other hand, contends that a good deal of the psychological testimony Mr. Brewer now claims should have been introduced during the penalty phase was adequately placed before the jury by way of Dr. Gagliano's testimony, given during the guilt/innocence phase and introduced by motion into the penalty phase. We disagree.

The major requirement of the penalty phase of a capital trial is that the sentence be individualized by focusing on the particularized characteristics of the defendant. *See Eddings v. Oklahoma,* 455 U.S. 104, 112, 102 S.Ct. 869, 875, 71 L.Ed.2d 1 (1982); *Woodson v. North Carolina,* 428 U.S. 280, 304, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976); *Gregg v. Georgia,* 428 U.S. 153, 199, 96 S.Ct. 2909, 2937, 49 L.Ed.2d 859 (1976). And, as the Supreme Court has observed, "[e]vidence of ... emotional disturbance is typically introduced by defendants in mitigation." *Eddings,* 455 U.S. at 115, 102 S.Ct. at 877; *see Hill v. Lockhart,* 28 F.3d 832, 844 (8th Cir. 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 778, 130 L.Ed.2d 673 (1995); *Schlup v. Armontrout,* 941 F.2d 631, 643 (8th Cir.1991),

---

**8.** Ms. Church testified regarding Mr. Brewer's competence to assist his counsel at trial and on the importance of placing mitigating psychological testimony before a sentencing jury. In all other respects, her testimony essentially paralleled that of Dr. Fleming. *See* R.Vol. VIII at 92–104.

In this appeal, Mr. Brewer's claims relate only to the sentencing phase of his trial. Furthermore, regarding Mr. Brewer's competence during the penalty phase, at oral argument counsel for Mr. Brewer conceded, "Mr. Brewer was competent, I believe, from a legal standpoint."

Thus, Mr. Brewer's competence to assist counsel during the penalty phase is not at issue in this case, and any question regarding his competence to stand trial for the substantive criminal offense is not properly before us.

**9.** The district court concluded that this diagnosis was essentially the same as that of Dr. Gagliano. R.Vol. I, Doc. 53 at 13. In his trial testimony, Dr. Gagliano characterized Mr. Brewer as having a "personality disorder." R.Supp.Vol. III at 921.

*cert.' denied,* 503 U.S. 909, 112 S.Ct. 1273, 117 L.Ed.2d 499 (1992); *see also* Gary Goodpaster, *The Trial for Life: Effective Assistance of Counsel in Death Penalty Cases,* 58 N.Y.U.L.Rev. 299, 300–03 (1983). Clearly, such mitigating evidence is not limited to evidence of guilt or innocence, nor does it necessarily relate solely to the circumstances of the offense. *See Parks v. Brown,* 860 F.2d 1545, 1554–55 (10th Cir.1988), *rev'd sub nom. Saffle v. Parks,* 494 U.S. 484, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990).

In this case, Dr. Gagliano's testimony was given at a point in the proceedings when the jury was focused on guilt or innocence rather than the sentence to be imposed. Furthermore, the testimony centered on Mr. Brewer's sanity at the time he committed the offense, and only tangentially touched upon the more chronic mental health problems to which Dr. Fleming testified at the federal habeas corpus hearing.[10]

Thus, while Dr. Gagliano's guilt/innocence phase testimony clearly was relevant to the first of the five mitigating instructions given by the court at sentencing,[11] its relevance with respect to the remaining instructions would have been less obvious to the jury. Unfortunately, counsel did nothing to clarify this obfuscation. Counsel waived opening statement and directed his closing argument toward his disagreement with the jury's ver-

dict of guilt and his generalized opposition to the death penalty. See R.Supp.Vol. III at 1070–71, 1080–91. Simply stated, defense counsel did nothing more with Dr. Gagliano's guilt/innocence phase testimony than to properly move for its introduction at sentencing. As a result, although the jury instructions provided "standards to guide" the jury in its deliberation of the sentence, we harbor serious doubt that "the sentencing authority [was] apprised of the information relevant to the imposition of the sentence." *Gregg,* 428 U.S. at 195, 96 S.Ct. at 2935. The jurors simply were left with no guidance as to how they might consider Dr. Gagliano's testimony in light of the mitigating instructions given by the court. *See Stephens v. Kemp,* 846 F.2d 642, 654–55 (11th Cir.), *cert. denied,* 488 U.S. 872, 109 S.Ct. 189, 102 L.Ed.2d 158 (1988); *see also Blanco v. Singletary,* 943 F.2d 1477, 1503 & n. 124 (11th Cir.1991), *cert. denied,* 504 U.S. 943, 112 S.Ct. 2282, 119 L.Ed.2d 207 (1992); *Armstrong v. Dugger,* 833 F.2d 1430, 1433 (11th Cir.1987). Accordingly, we must consider the evidence offered by Mr. Brewer at the federal hearing as well as the impact that evidence would have had on the jury had it been presented at sentencing.

In reviewing Dr. Fleming's testimony, and the thirteen-page psychological evaluation of

10. Dr. Gagliano testified that reviewing material from Mr. Brewer's mother and an interview with Mr. Brewer gave him

> a firm hold on Ben as a child, the manner in which he related, the multiple school changes, the never having had a stable relationship, his never forming good interpersonal or friendship relations which immediately was the seed for an antisocial personality or dissocial. He has never been a social person.

R.Supp.Vol. III at 924. Dr. Gagliano further testified that

> Ben is not a thought disorder or psychotic individual. Ben is a personality disorder.
>
> . . . .
> ... I think this report in 1976 [referring to the report from Eastern State Hospital] sums it up beautifully like what I just said. "Thus, he has many attitudes in common with antisocial personalities, such as the negative viewing of his environment," and this important point, "a propensity to do things on the spur of the moment with little reflection and a good deal of self-centeredness.... And it was predicted in 1976, and it was predicted in 1974 when Dr.

Alexis also stated almost verbatim that he is not likely to act in a violent manner unless provoked and when provoked, even Dr. Alexis predicted that it would be in some form of a violent fashion, whether it would be homicide or stealing cars, but it would be something antisocial.

*Id.* at 921–22.

11. The court five mitigation instructions given by the court were as follows:

> (1) Mental disease or defect impaired Mr. Brewer's capacity to appreciate the wrongfulness of his conduct or conform his conduct to the requirements of the law;
> (2) Mr. Brewer committed the crime while under the influence of extreme mental or emotional disturbance;
> (3) Mr. Brewer's childhood and environment and the manner in which he was raised had an adverse effect on his personality and contributed to the cause of the homicide;
> (4) Mr. Brewer's age at the time of the crime;
> (5) Mr. Brewer's criminal record consisted of only one prior conviction. Petr's Br. at 40 n. 14.

Mr. Brewer that she prepared, we note the conclusory nature of her diagnosis of Mr. Brewer as a man "who suffers significant mental illness." R.Vol. VIII at 69. We also note the absence in Mr. Brewer's mental health history of any diagnoses which corroborate Dr. Fleming's conclusion. There is nothing in the record which suggests Mr. Brewer suffers from significant mental health problems, nothing to suggest an organic brain disorder, nothing suggesting brain damage. He is not mentally retarded; he has an I.Q. of 120. He has never been hospitalized for treatment of any form of mental disease or condition, nor has he ever been on medication to control any mental disorder. On the standardized psychological tests administered by Dr. Fleming, Mr. Brewer tested within the normal range. When he was evaluated in 1974 by Dr. Paul Aleksic, he was diagnosed as having "pronounced schizoid features," but there was no indication at that time of "serious emotional deterioration." R.Vol. III, Doc. 10 at 7. Indeed, Dr. Aleksic found only "some schizophrenic traits evident in that he is socially and emotionally detached but there is no evidence of disorder thought or dissociation from reality." *Id.*

Mr. Brewer was evaluated at the Eastern State Hospital for his competency to stand trial on two occasions, in 1976 and again in 1978. While the foci of these evaluations were on Mr. Brewer's competency, we cannot overlook the fact that qualified physicians [12] at this state institution, on two separate occasions, found that Mr. Brewer had "no mental disorder." R.Vol. III, Docs. 11, 12. Although Dr. Fleming had some reservations regarding the Eastern State Hospital reports, her evaluation stated only that, had the examining physician "addressed the issue

of behavioral stability and the schizoid and depressive characteristics the report would have noted dynamics that indicated the need for treatment for this young man." Petr's Br., App. 1, at 7. Thus, Dr. Fleming did not dispute the hospital's conclusion regarding the absence of a mental disorder, it was simply her opinion that Mr. Brewer needed some form of unspecified "treatment." And finally, Dr. Gagliano testified that Mr. Brewer is not psychotic, nor did he suffer from any mental disorder or thought disorder prior to, or following, the homicide. R.Supp. Vol. III at 921.

We find nothing in Dr. Fleming's written evaluation of Mr. Brewer or her habeas hearing testimony which directly refutes, or even calls into question, the diagnoses of the several other mental health professionals who found no mental illness or thought disorder in Mr. Brewer.[13] She simply arrived at a different conclusion, which is not surprising given that psychiatry is not "an exact science, and psychiatrists disagree widely and frequently on what constitutes mental illness, on the appropriate diagnosis to be attached to a given behavior and symptoms, [and] on cure and treatment." *Ake v. Oklahoma,* 470 U.S. 68, 81, 105 S.Ct. 1087, 1095, 84 L.Ed.2d 53 (1985); *see Harris v. Vasquez,* 949 F.2d 1497, 1517 (9th Cir.1990), *cert. denied,* 503 U.S. 910, 112 S.Ct. 1275, 117 L.Ed.2d 501 (1992); *Silagy v. Peters,* 905 F.2d 986, 1013 (7th Cir.1990), *cert. denied,* 498 U.S. 1110, 111 S.Ct. 1024, 112 L.Ed.2d 1106 (1991). In light of the rather speculative nature of Dr. Fleming's conclusions and the conflicting diagnoses regarding Mr. Brewer's mental condition, we believe the jury would have viewed Mr. Brewer as, at most, a paranoid, antisocial man, suffering from a personality disorder evinced by violent and inappropriate behav-

---

**12.** Mr. Brewer argues that the competency evaluations performed at the Eastern State Hospital are unreliable because the attending physician, Dr. R.D. Garcia, suffered from an untreated manic-depressive illness during the time he evaluated Mr. Brewer. Petr's Br. at 4 n. 1. The district court found Mr. Brewer's evidence on this issue unpersuasive and we discern no error in that finding.

**13.** Dr. Fleming also noted that Mr. Brewer's relationships with women have been dysfunctional, especially in his sexuality. Yet, Dr. Fleming's

own evaluation states that Mr. Brewer's wife reported their "marriage had been good" until Mr. Brewer began to associate with two other men, whom Ms. Brewer believed were drug users, and it was at that time that Mr. Brewer became abusive and violent. Petr's Br., App. 1 at 5. We are therefore left to speculate whether this dysfunctionality was the product of mental illness, as Dr. Fleming suggests, or attributable to some other factor such as Mr. Brewer's drug use.

ior. Psychological testimony of the sort proffered at the federal hearing would not have been afforded considerable weight by the jury. Thus, we are doubtful that the jury would have found such evidence sufficiently mitigating to change the sentence rendered.

### B.

Mr. Brewer next claims that the jury should have heard testimony from his mother, Shirley Brewer Botkin. Ms. Botkin did not testify at the federal hearing. The only evidence proffered as to what her testimony would have been is an eighteen-page letter, prepared by Ms. Botkin, wherein she details her son's life history. R.Vol. III, Doc. 16.[14] The substance of this letter suggests that Ms. Botkin would have testified regarding her son's difficult childhood; her own inability to spend time with her son due to the demands of her employment; his father's disaffection and abuse, unspecified as to type, time, manner, degree, or duration; the family's instability, frequent moves, and financial hardships; Mr. Brewer's inability to make friends or form lasting relationships; his failed attempts at suicide; the fact that her son had been diagnosed with "schizophrenia brought on by pressures from his peers"; and Mr. Brewer's failed marriage.

Mr. Brewer argues that this evidence would have cast him as the unfortunate victim of a violent and turbulent upbringing. In considering Mr. Brewer's ineffectiveness claim, however, we "must consider the totality of the evidence before the judge or jury," *Strickland,* 466 U.S. at 695, 104 S.Ct. at 2069, not merely that part of the testimony which may have been helpful to Mr. Brewer's case. Thus, we believe it is just as probable that the jury may have concluded, not that Mr. Brewer was a victim of his environment, but that his crime was the culmination of his own, self-directed, violent, and irresponsible life. The jury would have heard testimony regarding Mr. Brewer's problems in school

and the fact that he eventually dropped out of school; his drug and alcohol abuse, and the fact that he had left home to take up residence with other drug users; his increasing alienation of his family; his inability to hold down a job; and his numerous parole violations. The jury undoubtedly would have been struck, as we are, by Mr. Brewer's escalating criminality: he had run away from home and been adjudged an ungovernable youth in 1973; he had been charged with third degree burglary for theft and placed on parole in 1975; he was convicted of first degree rape in 1977; and finally, he committed the instant crime in 1978. *See* R.Vol. III, Doc. 16. In short, while testimony from a family member may generally be beneficial to a capital defendant at sentencing, we believe that, in this case, the totality of Ms. Botkin's revelations could have been devastating.

We have taken due account of the impact that the errors Mr. Brewer claims were committed by his counsel would have had on the sentencing jury. This is not a case, however, in which the sentence rendered is "only weakly supported by the record." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. Given the State's overwhelming case against him, the number and gravity of the aggravating circumstances found by the jury, and the nature of the crime itself, we do not believe that the speculative, conclusory, and possibly damaging mitigating evidence offered now, seventeen years after the crime, would have resulted in the imposition of a sentence other than death. Even assuming deficient performance by counsel, Mr. Brewer has failed to demonstrate a reasonable probability that the outcome of his sentencing would have been different. Thus, our confidence in the outcome has not been undermined, *id.,* and we affirm the district court's denial of habeas relief on Mr. Brewer's ineffective assistance of counsel claim.

---

14. We are unable to locate where this letter was made part of the record. It is not in the form of an affidavit, it is undated, and while it is represented on appeal as being written "for her son's federal habeas appeal," Petr's Br. at 27, the text of the letter makes clear that it was prepared prior to Mr. Brewer's trial. The letter was included in an appendix to Mr. Brewer's original petition for habeas corpus. *See* R.Vol. III, Doc. 16. While we retain reservations as to the reliability of this document, because it is the only evidence proffered in the district court relating to Ms. Botkin's possible testimony, we consider it in this appeal.

## II. AKE CLAIM

■ Prior to trial, Mr. Brewer filed a motion requesting appointment of "a private medical expert" in order to "determine whether there exists a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society as is alleged in the bill of particulars filed by the state of Oklahoma in this case." R.Vol. III, Doc. 4 at 1.[15] The trial court denied the motion.[16] Mr. Brewer contends that the trial court's failure to appoint a mental health expert to assist in the penalty phase of his trial was a denial of due process.[17]

Subsequent to Mr. Brewer's trial, the Supreme Court decided *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). In *Ake*, the Court held that when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, "the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evalua-

tion, preparation, and presentation of the defense." *Id.* at 83, 105 S.Ct. at 1096.

The Court in *Ake* observed that "under certain circumstances, due process also entitles a criminal defendant to court-appointed psychiatric assistance during the sentencing phase of a capital proceeding." *Liles v. Saffle*, 945 F.2d 333, 335 (10th Cir.1991) (citing *Ake*, 470 U.S. at 83–84, 105 S.Ct. at 1096–97), *cert. denied*, 502 U.S. 1066, 112 S.Ct. 956, 117 L.Ed.2d 123 (1992); *see Clisby v. Jones*, 960 F.2d 925, 928–29 (11th Cir.1992); *Thompson v. Wainwright*, 787 F.2d 1447, 1458–59 (11th Cir.1986), *cert. denied sub nom. Thompson v. Dugger*, 481 U.S. 1042, 107 S.Ct. 1986, 95 L.Ed.2d 825 (1987).[18] Finding that the state trial court had deprived the petitioner of due process during the sentencing phase of his trial by denying him court-appointed psychiatric assistance "to *rebut* the State's evidence of his future dangerousness," *Ake*, 470 U.S. at 83, 105 S.Ct. at 1096 (emphasis added), the Court held that due process entitles a defendant to the appointment of a mental health expert "when the State presents psychiatric

---

15. The State of Oklahoma's bill of particulars alleged the following aggravating circumstances: (1) the murder was especially heinous, atrocious, or cruel; (2) there existed of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and (3) Mr. Brewer previously had been convicted of a felony involving the use or threat of violence. R.Vol. III, Doc. 21; *see* Okla.Stat.Ann. tit. 21, § 701.12 (West 1983). At trial, only the heinous, atrocious, or cruel aggravator and the continuing threat aggravator were alleged.

It is unclear at what point in the proceedings the State of Oklahoma determined not to pursue the continuing threat aggravating circumstance. For purposes of our review, however, we assume that on the date Mr. Brewer filed his motion seeking appointment of a mental health expert, January 18, 1983, the State was continuing to allege the continuing threat aggravator.

16. On direct review, the Oklahoma Court of Criminal Appeals noted that the only psychiatric expert to testify during the trial was the defense expert, Dr. Gagliano. The court then went on to hold that because the State had not introduced psychiatric testimony, it "did not have a strategic advantage over Brewer that would create a risk of error in the proceeding absent a defense witness to counter-balance the State's expert testimony." *Brewer v. State*, 718 P.2d 354, 363 (Okla.Crim.App.1986).

17. Mr. Brewer's argument on appeal suggests that he is challenging the court's denial of appointment of an expert for both the guilt/innocence phase and the penalty phase of his trial. Provision of psychological assistance during the guilt/innocence phase of his trial, however, was not an issue presented to the habeas court below and, consequently, it is not properly before this court now. *See Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 720 (10th Cir.1993). We therefore limit our review of Mr. Brewer's *Ake* claim to the penalty phase.

18. The nonretroactivity rule of *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), is not implicated in this case. *Ake* was decided on February 26, 1985 and Mr. Brewer's direct appeal did not become final until October 6, 1986, when the United States Supreme Court denied certiorari. *Brewer v. Oklahoma*, 479 U.S. 871, 107 S.Ct. 245, 93 L.Ed.2d 169 (1986).

In cases such as this, in which the trial court denied the defendant's motion for appointment of a mental health expert prior to the Court's decision in *Ake*, but to which the holding of *Ake* is applicable, "the question presented is whether, 'upon review of the entire record, [petitioner] *could have* made a threshold showing under *Ake* that "his sanity at the time of the offense is to be a significant factor at trial...." ' " *Liles*, 945 F.2d at 336 (quoting *Cartwright v. Maynard*, 802 F.2d 1203, 1212 (10th Cir.1986)) (alteration in original).

evidence of the defendant's future dangerousness." *Id.*

We have rejected a narrow construction of *Ake.* In *Liles v. Saffle,* 945 F.2d 333 (10th Cir.1991), we held that due process requires the appointment of a mental health expert to assist the defendant in the penalty phase when the State presents evidence, psychiatric or otherwise, concerning the defendant's future dangerousness, and the defendant establishes the likelihood that his mental condition could have been a significant mitigating factor. *Id.* at 341.

In denying Mr. Brewer's habeas corpus petition, the district court observed that, in this case, the State had not alleged the continuing threat aggravating circumstance in the sentencing phase of Mr. Brewer's trial, nor had the State presented evidence regarding Mr. Brewer's future dangerousness. Thus, according to the court, *Ake* and *Liles* did not dictate appointment of a mental health expert. *See* R.Vol. I, Doc. 53 at 12–13. While we agree with the district court, we arrive at our conclusion via a slightly different analysis.

At the time Mr. Brewer made his motion for the appointment of a mental health expert, the State had not dropped the continuing threat aggravating circumstance from its bill of particulars. Thus, although the trial court had before it a bill of particulars alleging the continuing threat aggravator, it nevertheless denied the defense motion for the appointment of a mental health expert. Under *Liles,* this was error. *See Liles,* 945 F.2d at 341; *see also Clisby,* 960 F.2d at 930; *Moore v. Kemp,* 809 F.2d 702, 710 (11th Cir.) ("[W]e must assess the reasonableness of the trial judge's action at the time he took it."), *cert. denied,* 481 U.S. 1054, 107 S.Ct. 2192, 95 L.Ed.2d 847 (1987). We therefore must consider whether Mr. Brewer suffered any harm resultant from the error.

■ The Eighth Circuit recently held that the denial of a psychiatric expert in violation of *Ake* is "trial error," and thus, subject to harmless-error analysis. *Starr v. Lockhart,* 23 F.3d 1280, 1291–92 (8th Cir.), *cert. denied sub nom. Norris v. Starr,* — U.S. —, 115 S.Ct. 499, 130 L.Ed.2d 409 (1994). We agree with the court's conclusion that "a right to

which a defendant is not entitled absent some threshold showing [cannot] fairly be defined as basic to the structure of a constitutional trial." *Starr,* 23 F.3d at 1291. Thus, harmless error review is appropriate. *See Rose v. Clark,* 478 U.S. 570, 577, 106 S.Ct. 3101, 3105–06, 92 L.Ed.2d 460 (1986) ("[I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis."); *United States v. Crozier,* 987 F.2d 893, 891–92 (2d Cir.1993); *cf. Arizona v. Fulminante,* 499 U.S. 279, 307–10, 111 S.Ct. 1246, 1263–65, 113 L.Ed.2d 302 (1991) (holding that certain constitutional errors, such as the deprivation of the right to counsel, are so fundamental that their existence abrogates the basic structure of a constitutional trial and are not, therefore, subject to harmlessness review).

We disagree with the Eighth Circuit, however, as to which harmless-error analysis is applicable. While the court in *Starr* applied the standard of *Chapman v. California,* 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967) (appropriate harmless error standard is whether federal constitutional error is "harmless beyond a reasonable doubt"), *Starr,* 23 F.3d at 1292, the Supreme Court, in *Brecht v. Abrahamson,* — U.S. —, —, 113 S.Ct. 1710, 1722, 123 L.Ed.2d 353 (1993), directed the federal courts, on habeas corpus review, to apply the standard set forth in *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), and determine whether the error "had substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 776, 66 S.Ct. at 1253. The Court in *Brecht* held that "the *Kotteakos* harmless-error standard, rather than the *Chapman* standard, applies in determining whether habeas relief must be granted because of constitutional error of the trial type." *Brecht,* — U.S. at —, 113 S.Ct. at 1722. Accordingly, we apply the *Kotteakos* harmless-error standard in our review of Mr. Brewer's *Ake* claim.

It is clear that the trial court's denial of Mr. Brewer's motion, though erroneous, was nonetheless harmless. Mr. Brewer's motion requesting appointment of the mental health

expert was framed exclusively for the purpose of rebutting the State's allegation that he posed a continuing threat to society. Therefore, when the State did not pursue the continuing threat aggravator at sentencing, the sole basis for Mr. Brewer's request disappeared. Simply stated, there was nothing for a defense psychiatric expert to rebut.[19] The error committed by the court in denying Mr. Brewer's motion, therefore, could not have had a substantial and injurious effect, nor could it have had any influence on the jury's recommendation of death. *Brecht,* —— U.S. at ——, 113 S.Ct. at 1722. Thus, in this case, we harbor no "grave doubt" that the error was harmless. *See O'Neal v. McAninch,* —— U.S. —— - ——, 115 S.Ct. 992, 994–95, 130 L.Ed.2d 947 (1995).

■ Mr. Brewer does not dispute that once the State dropped the continuing threat aggravating factor, any right which he may have had to the appointment of an expert to rebut that aggravator also became a nullity. He contends, however, that he nonetheless was entitled to appointment of a psychiatric expert. He argues that the mere fact that a capital defendant may offer affirmative psychiatric evidence in mitigation sufficiently calls the defendant's mental condition into question under *Ake* as to warrant appointment of an expert. We disagree.

Under Mr. Brewer's analysis, every capital defendant desiring such would be entitled to a court-appointed psychiatric expert at sentencing, regardless of whether he makes the requisite threshold showing of need. The Supreme Court, however, has rejected such a proposition: "A defendant's mental condition is not necessarily at issue in every criminal proceeding ... and it is unlikely that psychiatric assistance of the kind we have described would be of probable value in cases where it is not." *Ake,* 470 U.S. at 82, 105 S.Ct. at 1096.

*Ake* does not stand for the proposition that every capital defendant has a fundamental right to the appointment of a psychiatric expert to assist in the sentencing phase of trial. Rather, *Ake* ensures that when the resources of the State are brought to bear upon an indigent individual in the sentencing stage of the proceeding, he is provided with the "basic tools of an adequate defense" necessary to rebut the State's challenge. *Id.* at 77, 80, 105 S.Ct. at 1093, 1094–95; *Liles,* 945 F.2d at 341; *Kordenbrock v. Scroggy,* 919 F.2d 1091, 1105 (6th Cir.1990), *cert. denied,* 499 U.S. 970, 111 S.Ct. 1608, 113 L.Ed.2d 669 (1991); *Little v. Armontrout,* 835 F.2d 1240, 1244 (8th Cir.1987) (en banc), *cert. denied,* 487 U.S. 1210, 108 S.Ct. 2857, 101 L.Ed.2d 894 (1988); *see also Smith v. McCormick,* 914 F.2d 1153, 1162–63 (9th Cir.1990); *Davis v. Maynard,* 869 F.2d 1401, 1407 (10th Cir. 1989), *vacated sub nom. Saffle v. Davis,* 494 U.S. 1050, 110 S.Ct. 1516, 108 L.Ed.2d 756, *aff'd,* 911 F.2d 415 (10th Cir.1991); *Cartwright v. Maynard,* 802 F.2d 1203, 1214 (10th Cir.1986), *point aff'd on reh'g,* 822 F.2d 1477 (10th Cir.1987), *aff'd,* 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988); *Thompson v. Wainwright,* 787 F.2d 1447, 1458–59 (11th Cir.1986); *Bowden v. Kemp,* 767 F.2d 761, 763–64 (11th Cir.1985); *cf. United States v. Sloan,* 776 F.2d 926, 929 (10th Cir.1985); *Gore v. Dugger,* 763 F.Supp. 1110, 1120–21 (M.D.Fla.1989), *aff'd,* 933 F.2d 904 (11th Cir. 1991), *cert. denied,* 502 U.S. 1066, 112 S.Ct. 956, 117 L.Ed.2d 123 (1992). *See generally Britt v. North Carolina,* 404 U.S. 226, 227, 92 S.Ct. 431, 433, 30 L.Ed.2d 400 (1971); *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963) (state must insure meaningful chance to present defense); *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956) (state must provide indigent defendant trial transcripts). In this case, the State did not pursue the continuing threat aggravating factor at sentencing and there was, therefore, nothing for a defense psychiatrist to rebut. Thus, with respect to future dangerousness, Mr. Brewer's mental condition was not at issue during the penalty phase.

■ Mr. Brewer argues, however, that the State did place his mental condition at issue in the penalty phase by alleging that the crime was committed in an especially hei-

---

**19.** We note that although Mr. Brewer has challenged various facets of his trial counsel's effectiveness in this appeal, he has not raised the claim that counsel was ineffective in failing to frame the motion seeking appointment of a mental health expert more broadly.

nous, atrocious, and cruel manner. We disagree.[20]

The Oklahoma Court of Criminal Appeals has narrowed the heinous, atrocious, and cruel aggravating factor to encompass only those crimes in which "torture or serious physical abuse" precede the death of the victim. *See Stouffer v. State,* 742 P.2d 562, 563 (Okla.Crim.App.1987), *cert. denied,* 484 U.S. 1036, 108 S.Ct. 763, 98 L.Ed.2d 779 (1988). As noted previously, the jury instruction which was read to the jury in this case reflected that narrowing construction. *See supra* note 4. The Oklahoma Court of Criminal Appeals has construed the heinous, atrocious, and cruel aggravator in such a manner such that it does not implicate a defendant's mental condition. *Compare Stouffer,* 742 P.2d at 563, *with State v. Walton,* 159 Ariz. 571, 769 P.2d 1017, 1032–34 (1989) (construing "Especially heinous, cruel or depraved" aggravating circumstance to implicate mental state), *aff'd, Walton v. Arizona,* 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), it has not done so; *see also Cartwright v. Maynard,* 822 F.2d 1477, 1482 (10th Cir.1987) (determination of what narrowing construction of the "Especially heinous, atrocious, or cruel" aggravating circumstance would satisfy constitutional requirements left to state to decide in the first instance), *aff'd,* 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). Accordingly, we reject Mr. Brewer's argument that the State's allegation of the heinous, atrocious, and cruel aggravator sufficiently placed his mental condition at issue as to trigger the right to a court-appointed psychiatric expert.

In sum, the State of Oklahoma alleged two aggravating factors in the penalty phase of Mr. Brewer's trial. Neither of these factors, however, placed his mental condition at issue. Accordingly, we hold that the trial court did not deprive Mr. Brewer of due process by denying his request for a psychiatric expert to assist in the penalty phase of trial, and the

district court did not err in denying habeas corpus relief on Mr. Brewer's *Ake* claim.

### III. CONCLUSION

We have exhaustively reviewed the record in this case and carefully considered each of Mr. Brewer's claims properly before this court. For the foregoing reasons, we AFFIRM the district court's order denying Mr. Brewer's petition for a writ of habeas corpus.

---

20. At oral argument, Mr. Brewer's counsel also suggested that the prior violent felony aggravating circumstance, Okla.Stat.Ann. tit. 21, § 701.12(1) (West 1983), places the defendant's mental condition at issue. Again, we disagree. Especially in a case such as this, where the

defendant stipulated that he had been convicted of a prior felony involving the use or threat of violence to the person, this aggravating circumstance relates simply to the *fact* of a prior violent felony conviction.