**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 31 1999**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

JOEL LEE COMPTON,

Petitioner-Appellant,

v.

RON LYTLE, Warden; ATTORNEY
GENERAL STATE OF NEW
MEXICO,

Respondents-Appellees.

No. 98-2113
(D.C. No. CIV-94-1155-JP/LCS)
(D. N.M.)

---

ORDER AND JUDGMENT  *

---

Before **BALDOCK** , **BARRETT** , and **HENRY** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

---

*　　This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

this appeal.  See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

Petitioner Joel Lee Compton appeals the district court's order denying his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  He filed his habeas petition before enactment of the Antiterrorism and Effective Death Penalty Act (AEDPA), after exhausting his remedies in state court.  Following a hearing and review of depositions, a federal magistrate judge recommended the habeas petition be denied, and the recommendation was adopted by the district court.  We grant petitioner's request for issuance of a certificate of probable cause and affirm the district court's order denying habeas relief.

BACKGROUND

Petitioner was convicted in a New Mexico state court of first degree murder and aggravated assault and sentenced to death.  See State v. Compton, 726 P.2d 837 (N.M. 1986).  The governor later commuted his death sentence to life in prison.  The murder conviction was based on the shooting death of Officer Cline, a policeman called to investigate a disturbance at a motel in Albuquerque, New Mexico.  After Officer Cline looked into Room 24 from the doorway, he was mortally wounded by a rifle bullet.  Following the shooting, petitioner ran across the parking lot where he brandished his rifle at two people in an automobile, which formed the basis of the assault charge.  Thereafter, petitioner tossed his

-2-

rifle onto the automobile and lay prone in the parking lot where he was arrested. According to the prosecution, petitioner was outside Room 24 lying in wait for the officer. The defense admitted that petitioner shot the police officer, but argued that he was too impaired by alcohol and a related dissociative state to form the requisite intent for first degree murder. The defense contended that petitioner was guilty of only second degree murder and therefore was not eligible for the death penalty. According to the defense theory, petitioner was inside Room 24, not planning an ambush from the parking lot as the prosecution claimed, and fired his rifle because he expected more trouble from the "pimps" in the next room with whom he had fought earlier in the evening.

Petitioner claims he received constitutionally ineffective assistance of counsel in the guilt/innocence phase of his capital murder trial. He alleges that his attorneys committed the following errors: (1) they presented the theory that petitioner was in Room 24 when Officer Cline was shot even though there was evidence that the officer was not shot from Room 24, and as a result of their decision to adopt this theory, they failed to investigate whether someone other than petitioner shot the officer; (2) they admitted to the jury that petitioner shot the police officer and played a tape recording of his confession without having first discussed the strategy with petitioner and obtaining his consent to admit his guilt; (3) they failed to have him tested for hypoglycemia which could have

bolstered his claim that he was incapable of forming an intent to kill; and (4) instead of relying on a simple intoxication defense, they presented a defense of intoxication plus a related dissociative state that included evidence of petitioner's previous violent behavior, thus presenting the jury with an unfavorable picture of him. Petitioner has abandoned his claim that his Fifth Amendment rights were violated by the admission at trial of his taped confession and his argument based on spousal privilege.

## DISCUSSION

A claim of ineffective assistance of counsel presents a mixed question of law and fact which we review de novo. See Cooks v. Ward, 165 F.3d 1283, 1292 (10th Cir. 1998). To establish that counsel provided ineffective assistance, a defendant must establish both that his attorney's representation was deficient and that the attorney's substandard performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687 (1984).

### Failure to Investigate

Petitioner first argues that his trial attorneys rendered constitutionally ineffective assistance by failing to investigate the possibility that Officer Cline was shot by someone else from a vantage point away from the motel. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Id. at 691.

Petitioner maintains that although the evidence demonstrated that the fatal bullet could have been fired from a location other than Room 24, his attorneys failed to investigate this possibility. To support his claim that the evidence warranted further investigation of an alternate shooter theory, petitioner presented the testimony of Lawrence Trujillo, a private investigator hired to investigate the murder fourteen years later. In Trujillo's opinion, the fatal shot was fired from a rise behind a restaurant 172 feet away from Room 24. He relied on the autopsy report stating that the fatal bullet took a downward path through the victim's body and on the testimony of two witnesses at the murder trial who testified that Officer Cline was standing straight up when he was shot. Trujillo further supported his theory with the evidence that no one saw a muzzle flash and a police officer testified at the murder trial that he saw a mark on the corner of the motel wall that he thought possibly was made by the bullet that passed through Officer Cline, but apparently he concluded that it was not.

At trial, the defense explained the angle of the bullet through the victim's body by his crouched position as he looked into Room 24. Trial counsel did not rely exclusively on the angle of the bullet to explain the shooting because the bullet angle depended on how Officer Cline was standing when the bullet entered. See Murdoch deposition, at 54. The evidence placed petitioner in Room 24 with a rifle just before the shooting, he carried the rifle as he ran from the scene after the

shooting, the fatal bullet was never found (suggesting a trajectory away from Room 24, rather than one from the opposite direction under Trujillo's hypothesis), no one saw a muzzle flash outside Room 24 (supporting the theory that the rifle was fired from inside Room 24), petitioner was seen framed in the doorway of Room 24 after the shooting, the police firearms expert stated that the fatal shot was fired from a distance of five to thirteen feet, and petitioner confessed to a police officer and to the physician who treated a cut on his arm that he had shot Officer Cline. The lead defense attorney testified that the defense team considered a theory that someone else had shot Officer Cline, but rejected it as implausible.

Petitioner argues that Investigator Trujillo's theory of a shooter from an elevated spot behind the nearby restaurant best explains the angle of the fatal wound. Trujillo, however, did not attempt any mathematical calculations to demonstrate that a bullet fired from that location would have resulted in a trajectory consistent with the autopsy results. Furthermore, Trujillo's theory that the shot was fired from 172 feet away does not account for the police expert's opinion that the rifle shot that killed Officer Cline was fired from a close distance. In addition, Trujillo's opinion that Officer Cline could not have turned south from Room 24 because an automobile was parked right up next to the

building conflicts with the two trial witnesses who saw the officer face south at a right angle to Room 24 when he was shot.

Based on our review of the record and "applying a heavy measure of deference to counsel[s'] judgments," Strickland, 466 U.S. at 691, we determine that trial counsels' decision not to pursue a defense blaming another shooter "was an objectively reasonable decision supported by a reasonable investigation." Miles v. Dorsey, 61 F.3d 1459, 1476-77 (10th Cir. 1995). Therefore, we affirm the district court's conclusion that petitioner was not denied the effective assistance of trial counsel for failure to investigate.

<u>Unauthorized Waiver of Rights</u>

Next, petitioner alleges that his attorneys admitted to the jury that he had fired the fatal shot without discussing this strategy with him or obtaining his consent to do so. He claims that his constitutional rights were abridged absent a knowing and voluntary waiver. Petitioner testified at the federal court hearing that he did not expect or consent to the admission, that he went into court on the first day of his trial expecting his attorneys to prove his innocence, and that he did not know how they planned to do so despite many meetings with his attorneys before trial. The three defense attorneys testified in their respective depositions that they would have made such an admission only with the client's knowledge and consent. Each of the attorneys stated that petitioner had understood and

agreed with the defense strategy, even though some of their memories had faded with the passage of fourteen years between the trial and the depositions. The district court found that petitioner understood and consented to the defense strategy; that finding is not clearly erroneous.

To the extent petitioner argues that his attorneys are to be presumed ineffective because they admitted his guilt, see United States v. Williamson, 53 F.3d 1500, 1501 (10th Cir. 1995), we hold that the "statements in question are not the functional equivalent of a concession of guilt," id., and that counsel "did not cease to function as an advocate on behalf of [petitioner]," id. at 1512. Moreover, viewing the evidence against petitioner "from counsel's perspective at the time," Strickland, 466 U.S. at 689, we determine that the choice of a diminished capacity defense was "within the wide range of reasonable professional assistance," id. Accordingly, we conclude that the admission that petitioner fired the fatal shot did not render counsel's assistance constitutionally ineffective.

We also reject petitioner's claim that his attorneys were ineffective by playing for the jury his tape-recorded confession given on the night of the shooting. Before trial, defense counsel obtained an order suppressing the confession. Thereafter, defense counsel decided to play the confession tapes at trial to demonstrate petitioner's condition shortly after the shooting and to convey his version of the events to the jury without having him testify, which would have

exposed him to damaging cross-examination. Moreover, petitioner testified before the federal district court that he agreed that the tapes of his confession should be played for the jury to show his frame of mind. Petitioner has not overcome the presumption that the decision to play the tapes was sound trial strategy. See Strickland, 466 U.S. at 689.

Failure to Test for Hypoglycemia

Petitioner maintains his attorneys were ineffective because they did not have him tested for hypoglycemia before trial. Dr. Ferraro, the defense expert in psychopharmacology, informed defense counsel that if petitioner had hypoglycemia, it would be another factor contributing to a conclusion that he lacked the requisite intent for first degree murder. Upon his arrival at prison, he was diagnosed with hypoglycemia. The deposition of Patrick Boyle, M.D., an expert on hypoglycemia and diabetes, was submitted in the federal habeas proceedings. After reviewing petitioner's medical records, Dr. Boyle stated that he did not have hypoglycemia.

Petitioner argues that if he had been diagnosed with hypoglycemia before trial and if the evidence showed that he was suffering from a hypoglycemia-induced episode at the time of the shooting and that the condition contributed to his inability to form the intent to kill, the jury would have been more likely to find that the did not have the requisite intent to commit first degree

murder. The jury had before it evidence that petitioner was intoxicated and in a state of dissociation at the time of the shooting. It is obvious by their verdict of first degree murder that the jury rejected petitioner's diminished capacity defense. Thus, even if we were to entertain this speculative argument, cf. Castro v. Ward, 138 F.3d 810, 819 (10th Cir.) (speculative accusations insufficient to overcome presumption of correctness afforded state courts' factual findings), cert. denied, 119 S. Ct. 422 (1998), we would conclude that the jury would not have given such weight to evidence of hypoglycemia that it would have affected the verdict, cf. Brewer v. Reynolds, 51 F.3d 1519, 1526-27 (10th Cir. 1995) (opinion of psychologist reaching different conclusion than other mental health professionals would not have been afforded much weight by jury in sentencing phase; therefore, counsel's failure to present psychological evidence did not prejudice defendant).

## Choice of Defense

Finally, petitioner asserts that his attorneys were ineffective for mounting a defense of intoxication plus a related dissociative state because to show the dissociative state, evidence of his dysfunctional and violent past was presented to the jury. He claims this bad-acts evidence turned the jury against him and resulted in his conviction. We must avoid the "distorting effects of hindsight" and evaluate the decision from "counsel's perspective at the time." Strickland, 466 U.S. at 689. There is a presumption that the decision to present the evidence

-10-

to which petitioner now objects was sound trial strategy, _see_ _id._, and petitioner has not overcome that presumption.

## CONCLUSION

We have carefully examined petitioner's arguments, as well as the evidence and authorities he relies on to support those arguments. For the reasons stated above, we conclude that he has failed to establish that his attorneys' representation was deficient or that their performance prejudiced him. Accordingly, we conclude that petitioner did not receive constitutionally ineffective assistance of counsel.

Petitioner's application for a certificate of probable cause is GRANTED. The district court's judgment denying habeas relief is AFFIRMED.

Entered for the Court

James E. Barrett
Senior Circuit Judge