**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 7 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

MARK CHARLES THOMAS,

      Defendant-Appellant.

No. 99-1334
(District of Colorado)
(D.C. No. 98-CR-65-M)

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, **ALARCON**,[**] and **PORFILIO**, Circuit Judges.


## I. INTRODUCTION AND BACKGROUND

In 1996, Mark Charles Thomas was arrested and indicted on a charge of

credit card fraud, to which he later pleaded guilty. As a consequence, a federal

district court sentenced Thomas to thirty-three months imprisonment. He was

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]Honorable Arthur L. Alarcon, Senior Circuit Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

then incarcerated at the Federal Prison Camp (the "Prison Camp") in Florence, Colorado, a minimum security facility. On May 17, 1997, Thomas disappeared from the Prison Camp.

In December of 1997, the appellant[1] was arrested in Bellevue, Washington. A grand jury thereafter indicted the appellant on one count of escape from a federal prison in violation of 18 U.S.C. § 751(a). At trial, the appellant represented himself and maintained that he was Andre Strauss, not Mark Charles Thomas. Nonetheless, a jury convicted the appellant of the charged crime and he was sentenced to forty-one months' imprisonment, to run consecutive to the sentence he was serving on the credit card fraud conviction. [Vol I at 95] The appellant now appeals his conviction and sentence.

On appeal, this court must decide three issues: (1) whether the district court committed reversible error by denying the appellant's request for funds to hire a fingerprint expert; (2) whether the district court erred in excluding exhibits offered by the appellant; and (3) whether the appellant must be resentenced because the district court denied his request for an attorney at sentencing. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **affirms** the conviction but **remands** for resentencing.

---

[1]Because the appellant contends this is a case of mistaken identity, for sake of clarity, this court will refer to him as "the appellant" rather than "Thomas."

## II. DISCUSSION

### A. The Denial of a Fingerprint Expert

Three days prior to trial, the appellant filed a motion requesting that the court provide him funds to retain a fingerprint expert. The district court then asked the government how it intended to prove the appellant's identity at trial. After listening to the government's proffer of extensive identity evidence, which included comparative fingerprint evidence and related expert testimony, the district court denied the appellant's motion to receive funds to hire a fingerprint expert. At trial, the government placed into evidence fingerprints taken from Mark Charles Thomas the day he was arrested in 1996 for credit card fraud and fingerprints taken from Thomas upon his incarceration at the Prison Camp. The government's fingerprint expert then testified that those two sets of prints matched prints taken from the appellant after he was apprehended in Washington state. The appellant now challenges the district court's ruling denying him funds to obtain his own fingerprint expert.

This court need not resolve whether the district court's denial of the appellant's request for funds was erroneous, because even if it was, the error was not sufficiently harmful to require reversal of the appellant's conviction. Thomas

argues that both the Criminal Justice Act[2] and the United States Constitution[3] provide him the right to obtain the requested funds. When a trial court's ruling deprives a party of a right, the harmless-error standard applied by this court is directed by whether that right is statutory or constitutional. If a trial court's ruling violated a non-constitutional right, we can nonetheless affirm the conviction so long as the error did not have a substantial influence on the jury's verdict. *See United States v. Hanzlicek*, 187 F.3d 1228, 1237 (10th Cir. 1999). If a trial court's ruling impinged upon a constitutional right, however, this court generally must reverse the conviction unless we conclude the error was harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 24 (1967). A small class of fundamental constitutional errors are considered structural errors and are thus not subject to harmless error analysis, instead requiring reversal of the conviction. *See Neder v. United States*, 527 U.S. 1, 7 (1999); *United States v. Pearson*, 203 F.3d 1243, 1260 (10th Cir. 2000).

---

[2]The Criminal Justice Act ("CJA") provides, in part,
> Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for adequate representation may request them in an ex parte application. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them, the court . . . shall authorize counsel to obtain services.

18 U.S.C. § 3006A(e)(1).

[3]Thomas contends this constitutional right flows from both the Fifth and Sixth Amendments.

The appellant contends the district court's denial of the funds for a fingerprint expert rises to the level of structural constitutional error, mandating that this court reverse his conviction. The appellant's argument, however, is foreclosed by this court's decision in *Brewer v. Reynolds*, which held that the denial of a psychiatric expert in violation of *Ake v. Oklahoma*, 470 U.S. 68 (1985) does not constitute structural error. *See* 51 F.3d 1519, 1529 (10th Cir. 1995). The *Brewer* court reasoned "that a right to which a appellant is not entitled absent some threshold showing [cannot] fairly be defined as basic to the structure of a constitutional trial." *Id*. (quotation omitted). Although no court has ever decided when a criminal appellant is constitutionally entitled to the services of a fingerprint expert, such a right is akin to the right to the assistance of a mental health expert announced in *Ake*. A appellant's constitutional right to a fingerprint expert thus only arises upon a threshold showing that proof of the perpetrator's identity through fingerprint evidence is likely to be a significant factor at trial. *See Ake*, 470 U.S. at 83 (holding that when a appellant makes a threshold showing that his mental condition at the time of the offense is likely to be a significant factor at trial, the government must provide the appellant the services of a mental health expert to satisfy due process). Pursuant to *Brewer*, therefore, the district court's denial of the appellant's request for funds for a fingerprint expert cannot

amount to structural error; the ruling, if error, is thus subject to harmless error analysis.

This court need not determine whether the district court's ruling deprived the appellant of either a constitutional or statutory right, or perhaps both, because even under the harmless error standard applicable to non-structural constitutional deprivations, the conviction can be affirmed. Both parties recognize that it is difficult in this case to measure the harm resulting from the district court's denial of the appellant's request, because we cannot know how an expert obtained by the appellant would have assessed the government's fingerprint evidence or how that defense expert would have assisted the appellant in developing a cross-examination of the government's expert. Even assuming, however, that a fingerprint expert obtained by the appellant would have enabled the appellant to cause the jury to discount entirely the government's fingerprint evidence, this court is nonetheless convinced the district court's ruling was harmless beyond a reasonable doubt. *See Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986) (holding that when a appellant is denied the constitutional right to cross-examine a witness for bias, the proper inquiry is "whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt").

At trial, the government presented substantial identity evidence apart from the fingerprint evidence. Four separate witnesses unequivocally identified the appellant as the Mark Charles Thomas incarcerated in 1997 at the Prison Camp for committing credit card fraud. Patrick Corcoran, the postal inspector who arrested Mark Charles Thomas on September 23, 1996, identified the appellant as the same person he arrested that day and as the same person who later was indicted, who pleaded guilty, and who was sentenced for credit card fraud. Christopher Perez, a probation officer who was also present when Mark Charles Thomas pleaded guilty to and was sentenced for the credit card fraud charge, similarly identified the appellant as that same person. Anne Cummins, a case manager at the Prison Camp who testified she had contact with Mark Charles Thomas several times a week at the Prison Camp, stated she was "absolutely positive" the appellant was Thomas. Cummins elaborated on her identification: "My recollection is that Mark Charles Thomas looked exactly like the appellant standing before me, and spoke and walked much like, if not exactly like, the appellant before me." Finally, Marino Tejera, a correctional officer at the Prison Camp during Thomas' incarceration, identified the appellant as Thomas. Tejera testified that Thomas' appearance was particularly etched in his memory because after Thomas escaped, a significant event for Tejera, he looked at a photograph of Thomas and remembered that he had spoken with Thomas just a few days earlier.

In addition, the government produced two photographs of Thomas, one taken upon Thomas' arrest in 1996 and the other taken when Thomas was incarcerated at the Prison Camp. These photographs allowed the jury to compare the appearance of Mark Charles Thomas with that of the appellant. The government also adduced evidence to discredit the appellant's claim that he is in fact Andre Strauss and not Mark Charles Thomas. Michael Cate, the police officer who arrested the appellant in Bellevue, Washington, testified that the appellant initially identified himself as Michael Coiffure and only later gave Andre Strauss as his name. After the appellant elicited testimony from Cate that he found a World Service Authority[4] ("WSA") passport bearing the name Andre Strauss and the appellant's picture in the glove box of the appellant's car, Cate stated on re-direct that he also discovered in the same glove box an international driver's license with the appellant's picture in the name of Jack White. The government also placed into evidence a second passport issued by the WSA bearing the appellant's picture but in the name of Michael Coiffure. To further minimize the significance of the Andre Strauss WSA passport, as well as an identity card and a birth certificate in that name issued by the WSA and introduced into evidence by the appellant, the government elicited testimony from

[4]According to the testimony of the president of the World Service Authority, the WSA is a non-profit organization that promotes the "right to freedom of movement."

the President of the WSA that anyone who mails a completed application, a photograph, a fingerprint,[5] and the required monetary fee can obtain these documents.

In sum, the government presented overwhelming evidence, apart from the fingerprint evidence, that the appellant is the same Mark Charles Thomas who escaped his incarceration at the Prison Camp in May of 1997. Because the prosecution's case was so strong and the fingerprint evidence was not that important to prove the appellant's identity, in light of the overwhelming amount of other identity evidence, this court is convinced that the district court's denial of the appellant's request for funds for a fingerprint expert was harmless beyond a reasonable doubt. *See id*. The denial of the appellant's request, therefore, does not provide a basis to overturn the appellant's conviction.

**B. The Texas Records Evidence**

During the appellant's case, he attempted to place into evidence an identification card issued by the state of Texas to Andre Strauss and bearing the appellant's photograph, as well as the file maintained by Texas in connection with this identification card (collectively, the "Texas records"). The identification card was discovered by Special Agent Wood during a search of the hotel room in

---

[5]The president of the WSA conceded that the fingerprint is not compared to any exemplars to ascertain the applicant's true identity prior to issuing the requested document.

which the appellant was staying at the time of his arrest in Washington. The

district court denied the admission of the Texas records unless the appellant

called Agent Wood to establish a foundation for the evidence. The court also

rejected the appellant's contention that these documents were admissible as public

records. Understanding that if Agent Wood were called to testify the government

would elicit from him further testimony that he found additional documents in the

hotel room in the name of Mark Charles Thomas, the appellant never called Wood

in an attempt to admit the Texas records. On appeal, the appellant argues the

district court's refusal to admit these documents was erroneous. This court

reviews for abuse of discretion a trial court's ruling on the admissibility of

evidence. *See Hanzlicek*, 187 F.3d at 1236.

Even if the Texas records are self-authenticating pursuant to Federal Rule

of Evidence 902, the documents contain hearsay statements which can only be

admitted if they fall within a recognized hearsay exception. The appellant was

offering the Texas records precisely for the truth of the matter allegedly asserted

by the state of Texas within those documents, i.e., that the person whose

photograph is on the identification card is Andre Strauss. *See* Fed. R. Evid.

801(c). The appellant contends the Texas records are nonetheless admissible

because they qualify as public records under the public records exception to the

hearsay rule. *See* Fed. R. Evid. 803(8). Under that exception, however, a district

court may refuse to admit hearsay statements in a public record if "the sources of information or other circumstances indicate lack of trustworthiness." *Id.* In the instant case, the district court had no way to ascertain whether the State of Texas undertook any steps to determine whether the person in the photograph on the identification card is, in fact, Andre Strauss; no Texas official testified to the process through which a person can obtain this type of identification card, nor do the Texas records suggest anything about that process. It is thus entirely possible that Texas issued the card purely on the appellant's own assertion that he is Andre Strauss. Moreover, the Texas records do reveal that although Texas issued the appellant the identification card, it later rejected his application for a driver's license because he failed to provide a social security number, a further indicator of the lack of trustworthiness inherent in the proferred hearsay statement. Because the circumstances surrounding the Texas records indicate the hearsay statements contained within lack trustworthiness, the district court did not abuse its discretion in refusing to admit these documents into evidence.

## C. Right to Counsel at Sentencing

After the appellant was convicted but several weeks prior to his scheduled sentencing hearing, he moved to withdraw as his own counsel and have the court appoint an attorney to represent him at sentencing. The appellant contended the federal sentencing guidelines were sufficiently complicated to require

representation by an attorney. On the day of sentencing, the district court denied that motion. The appellant argues the district court's denial of his request for counsel at sentencing violated the Sixth Amendment. *See Gardner v. Florida*, 430 U.S. 349, 358 (1977) (noting that a criminal appellant retains the Sixth Amendment right to counsel during sentencing); *United States v. Taylor*, 933 F.2d 307, 311 (5th Cir. 1991) (holding that a appellant who waived the right to counsel at trial does not thereby lose the ability to assert that right at sentencing). The government concedes that the district court's denial of the appellant's request for counsel constitutes a structural violation of the Sixth Amendment, requiring remand for resentencing. This court therefore vacates the sentence imposed and remands for resentencing.

## III. CONCLUSION

The district court's denial of the appellant's request for funds to hire a fingerprint expert, even if erroneous, was not sufficiently harmful to require reversal. Furthermore, the district court did not err in refusing to accept into evidence the Texas documents. The conviction entered in the United States District Court for the District of Colorado is thus hereby **AFFIRMED**. Because the district court denied the appellant's request for counsel at sentencing,

however, this court **VACATES** the sentence imposed and **REMANDS** for further sentencing proceedings consistent with this opinion.

ENTERED FOR THE COURT:


Michael R. Murphy
Circuit Judge